UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>ARTHUR SOTIRION )<br>) | NO. CR-N-30033-MAP |

**PRELIMINARY MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANT'S MOTION TO SUPPRESS**

FACTS

Commencing in 2000 and continuing, Agents of the FBI and the United States Attorney's Office began a public corruption investigation directed in part against the Springfield Housing Authority. The existence of the investigation and it targets were well known by 2001. The service of Grand Jury Subpoenaes, and the execution of search warrants were widely documented in the local media. By the fall of 2002 the Bureau believed Sotirion was aware he was a target of the investigation and he had taken steps to remove SHA records from computers at their facility as well as ceasing activities which were the focus of the investigation. In January of 2003 S/A Hedges made an application for a search warrant to search Sotirion's residence at 811 Dickinson Street. The affidavit accompanying the application detailed Sotirion's knowledge of the investigation and his efforts to thwart it. The bulk of the affidavit detailed the agents discovery of checks issued by SHA Vendors for payment of Sotirion's personal expenses. The latest check documenting the scheme was dated September 2001. The second section of the affidavit detailed invoices from one SHA vendor to Sotirion for personal services rendered which went unpaid. The vendor informed the agents he feared collection action would jeopardize his work with the SHA. Invoices from another of the SHA vendors for personal service to Sotirion also reflected no payment. Lastly the affidavit dealt with the collection of fifty thousand dollars in coins from SHA Laundry revenues by Sotirion and others from 2000 through August 2002 and Sotirion's knowledge of the FBI Agents activities at the SHA.

## ARGUMENT
## SCOPE OF THE SEARCH AND THE
## PARTICULARITY REQUIREMENT

A search warrant must particularly describe the items to be seized. The purpose of this requirement is to render general searches impossible and prevent the seizure of one thing under a warrant describing another.

The degree of specificity required when describing the object to be seized may necessarily vary according to the circumstances and types of items required. The particularity requirement of the Fourth Amendment "prevent a general exploration of rummaging in a person's belongings." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443 (1971). This makes general searches impossible and prevents the seizure of one thing under a warrant describing another. As to what is being taken nothing is left to the discretion of the officer executing the warrant. It insures that search is confined in scope to <u>particularly described evidence</u> relating to a <u>specific crime</u> for which there is <u>demonstrated probable cause.</u>

The affidavit utilized here to support probable cause to issue the warrants to search the residence failed to establish that particular items of evidence described in the warrant would likely be located there.

The warrant was impermissibly broad in that generic classes of items the warrant described as seizable were not supported by a factual basis to establish them as fruits of specific criminal activity which were probably located at the site.

Attachment "A" to the warrant, the document which purported to particularly describe was overly broad and included objects clearly not evidence of crime.

In making a determination of whether the warrant which issued was overly broad, the court should examine the degree of specificity required where as here the Government had informants that had access to the places to be searched and were able to provide agents with details about the conspirators. In view of this wealth of information, it cannot be reasonable to authorize a warrant, and as a substitution for particular descriptions the agents were plainly able to obtain, to insert generic classes of items which the affidavit demonstrated were unlikely to be present.

-2-

Rather than request specific items which arguably related to the crimes under investigation, the agents sought permission to seize items the affidavit clearly did not suggest would be present or likely to be in these locations.

Similarly, the attachment did not seek to differentiate between what might probably be found at a residence from what might probably be found in other areas.

The agents in this case recognized that most, if not all, of the criminal activity under investigation had occurred prior to 2001. The likelihood of finding evidence of crime at the location was remote.

In lieu of a specific description which was easily ascertainable, the agents applying for the warrant opted to include a boiler plate, generic laundry list permitting the seizure of numerous items for which neither probable cause existed, nor any probability that such items would be found.

In any event, the officer executing the warrant exceeded even the broad grant provided by the warrant and seized a number of items which were clearly not described in any of the categories in Attachment "A", including safety deposit box keys, tax returns and other items.

As part of the probable cause doctrine what is required is that evidence of the crime can be found at the described locus at the time of the search. United States v. Arguirre, 839 F.2d 854 (1st Cir. 1987)(emphasis supplied).

Although discussed in the context of an anticipatory search warrant, the First circuit Court of Appeals had held that magistrates who are asked to issue warrants should draft them narrowly enough to insure that opportunities for exercising unfettered discretion are eliminated and that the conditions set for governing the agent service of them should be explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation. United States v. Ricciardelli, 998 F.2d 8, 12 (1st Cir. 1993).

In addition to general probable cause requirements, search warrants require two additional conclusions necessary to their issuance supported by substantial evidence that the items sought are in fact seizable by virtue of being connected to criminal activity and that the items will be found in the place searched. United States v. Diaz, 841 F.1d 1, 3 (1st Cir. 1988).

Where an affidavit does not indicate any nexus between particular items and criminal behavior, seizure of those items is improper.

## PROBABLE CAUSE

Probable cause is the product of probabilities, not absolutes. The principal issue in any probable cause analysis is whether the magistrate had a "substantial basis on which to conclude that the articles or activity described [was] probably present or occurring at the place to be searched.

The Fourth Amendment to the Federal Constitution requires a magistrate to determine that probable cause exists before issuing a search warrant. The requisite probable cause for the search of the dwelling must be contained within the four corners of the affidavit. Probable cause sufficient to support the issuance of a search warrant is "something more than mere suspicion, but something less than evidence sufficient to warrant a conviction." The issuing magistrate and reviewing court may rely only upon information expressly recited within the affidavit and inferences which may reasonably drawn from the affidavit.

For evidence to avert suppression, normally the warrant application must demonstrate probable cause to believe that a particular person has committed a crime–"the commission element"–*and* that enumerated evidence relevant to the probable criminality likely is located at the place to be searched–"the nexus element". United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir.) (cert. denied). The issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application. See, e.g., Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971). Under the "probable cause" standard, the "totality of the circumstances" disclosed in the supporting affidavits must demonstrate "a *fair probability* that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 232, 76 L.Ed.2d 527 (1983).

Among others, the factors that may contribute to a "probable cause" determination include whether an affidavit supports the probable "'veracity' or 'basis of knowledge' of persons supplying hearsay information," *and* whether informant statements are self-authenticating.

Reviewing courts, including both the district court and the court of appeals, must accord "considerable deference" to the "probable cause" determination made by the issuing magistrate.

[T]he duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for...conclud[ing]' that probable cause existed."). The reviewing court must examine "the affidavit in 'a practical, "common sense" fashion, and [] accord considerable deference to reasonable inferences the [issuing magistrate] may have drawn from the attested facts." Moreover, given the strong preference for warrants under our Fourth Amendment jurisprudence, normally a reviewing court will defer to an issuing magistrate's "probable cause" determination in a doubtful or marginal case. See United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); United States v. Craig, 861 F.2d 818, 823 (5th Cir. 1988).

In each case the basic question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched. While the principle facts that supporting probable cause must be "closely related to the time of the issue of the warrant [so] as to justify a finding of probable cause at that time", the timeliness must be "determined by the circumstances of each case."

In order to establish probable cause, an affidavit must "contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched."

It is, moreover, imperative that the warrant establish not only this kind of tri-cornered nexus between the criminal act, the evidence to be seized and the place to be searched, but also that the nexus incorporate a temporal dimension. The important privacy interests protected by the Fourth Amendment make it incumbent upon the magistrate to craft the warrant with explicit, clear, and narrowly drawn conditions governing its execution to ensure that the anticipated nexus will actually exist if and when the warrant is executed. The "commission" and "nexus" elements in the "probable cause" analysis each include a temporal component. The issuing magistrate must not only consider the accuracy and reliability of the historical facts related in the affidavits, but must determine, *inter alia*, whether the facts reasonably inferable from the affidavits demonstrate a "fair probability" that evidence material to the "commission" of the probable crime will be disclosed at the searched premises at the time the search warrant would issue, rather than at some remote or future time.

In the present instance, the agents sought to establish probable cause to search the

-5-

residence for evidence of crimes when the defendant was already aware he was the target of the investigation for some time..

The defendant does not dispute the affiant was provided information from a source with first hand knowledge whose information was corroborated by independent investigation as well as its own particularly detailed nature.

There are several aspects of the information provided which do affect the existence of probable cause. The first of these concerns the temporal aspect of the information. It is clear from a review of the information the defendant and the informant were intimately connected. A common sense reading of the affidavit shows the defendant knew of the Government's inquiries and what they would ultimately lead to.

In the affidavit at issue here there was no information provided to link the items described in the warrant to 811 Dickinson Street, beyond the Hastie Fence. No information linked any of the criminal activity to the locus nor was there any information to directly suggest any billing was actually sent to this address. Neither was there information from which the Magistrate could conclude evidence of the crimes under investigation were likely to be concealed there. Interestingly the agent offered no factual basis to conclude the items of evidence associated with this type of criminal activity were in his experience likely to be found in a residence.

As part of this argument the Court should consider the likelihood the information offered was stale insofar as the defendant was alerted to the Government's investigation and most of the criminal activity referenced in the affidavit was several years old.

Whether averments in an affidavit are sufficiently timely to establish probable cause depends upon particular circumstances of each case. United States v. Bucuvalas, 970 F.2d 937 (1st Cir. 1992). The basis of the maturity of the affiant's input in relation to the nature of the suspected criminal activity (discrete crime or regenerating conspiracy). The habits of the suspected criminal ("nomadic or entrenched"), 3)the character of the items to be seized perishable or of enduring utility; 4) the nature and fact of the premises to be searched, (mere criminal forum or secure operational base). United States v. Moscatiello, 771 F.2d 589 (1st Cir. 1985). In this regard even though the affidavit demonstrates ongoing criminal activity by a group of individuals; utilizing the criteria set forth above the information provided did not, without

more, save the affidavit from a claim of staleness.

Nowhere within the four corners of the affidavit is a temporal nexus demonstrated to establish the probability of evidence of the conspiracy was still to be found at the defendant's residence. No informant provided the agents with information that established certain particularly described items would still be present at the defendant's home in January 2003.

## CONCLUSION

For all of the reasons mentioned above, the defendant has demonstrated his entitlement to an evidentiary hearing as to the issues raised herein.

Respectfully submitted,

THE DEFENDANT

BY: /s/ Vincent A. Bongiorni, Esq.
95 State Street, Suite #309
Springfield, MA  01103
(413) 739-2112
BBO #049040

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA            )

|                   |   |                    |
|-------------------|---|--------------------|
| vs.               | ) | NO. CR-N-30033-MAP |
| ARTHUR SOTIRION   | ) |                    |

## AFFIDAVIT IN SUPPORT OF PRELIMINARY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS

Now comes Arthur Sotirion being duly sworn hereby deposes and states as follows;

I am the defendant in the above entitled action. I have reviewed the search warrants for the premises known as 811 Dickinson Street. I believe and therefore aver Agents of the FBI seized items of evidence not particularly described by the warrant including, but not limited to safety deposit box keys, computer tower, personal retirement account information, tax returns, floppy discs, product registration cards and various other financial documents which were not particularly described as seizable in the warrant.

Signed under the pains and penalties of perjury this __ day of December 2005.

/s/ Arthur Sotirion

-8-