UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR-N-04-30033-MAP |
| Plaintiff, | ) |
| vs. | ) |
| RAYMOND ASSELIN, SR., et al., | ) |
| Defendants. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT SOTIRION'S MOTION TO SUPPRESS

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files its response to defendant 's Motion to Suppress.

More than enough probable cause and particularity existed to search defendant 's residence. Given the lengthy time that the bribery scheme spanned, and the link to defendant , it was highly likely that the agents would find incriminating evidence at his residence. Moreover, the warrant was sufficiently particular because it limited the class of seizable documents to those relating to home improvement projects and bribery. The agents also acted in good faith in executing the search warrant, thus rendering the confiscated items lawfully seized and admissible under <u>Leon</u>. Finally, many of the contested items were properly

seized under the plain view doctrine.

I. **Sufficient Probable Cause And Particularity Existed To Search Defendant Sotirion's Residence For All Of The Items Listed In Attachment A.**

The Fourth Amendment requires that a warrant "particularly describe" the place to be searched and the persons or things to be seized. U.S. Const. Amend. IV; see United States v. Morris, 977 F.2d 677 (1st Cir. 1992). "Any search intruding upon that privacy interest must be justified by probable cause and must satisfy the particularity requirements, which limits the scope and intensity of the search." United States v. Bonner, 808 F.2d 864, 867 (1st Cir. 1987).

A. Probable Cause

Probable cause for a warrant based on an affidavit "'exists where information in the affidavit reveals "a fair probability that contraband or evidence of a crime will be found in a particular place."'" United States v. Syphers, 426 F.3d 461, 464 (1st Cir. 2005)(quotations omitted). "'"Probability is the touchstone" of this inquiry.'" Syphers, 426 F.3d at 464. "'[P]robable cause only requires a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Syphers, 426 F.3d at 465 (quoting United States v. Garcia, 197 F.3d 1223, 1227 (8th Cir. 1999)(internal quotations and citation omitted)). See also United States v. Burke, 999 F.2d 596, 599 (1st Cir. 1993)("[t]he standard of probable cause

2

requires a probability, not a prima facie showing, of criminal activity.'"").

"`The standard applied in determining the sufficiency of an affidavit is a "totality of the circumstances" test.'" Syphers, 426 F.3d at 465 (quoting Garcia, 983 F.2d at 1167 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "`"[S]earch warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided."'" Syphers, 426 F.3d at 465 (quoting Baldyga, 233 F.3d at 683 (quoting United States v. Bonner, 808 F.2d 864, 868 (1st Cir. 1986)). See also Maryland v. Pringle, 540 U.S. 366, 370 (2003)("[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (internal quotations and citation omitted). The court "`is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts.'" Falon, 959 F.2d at 1147 (quoting United States v. Hershenow, 680 F.2d 847, 852 (1st Cir. 1982)). In addition, "circumstantial evidence alone may establish probable cause." United States v. Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992).

In reviewing the affidavit supporting an application for a search warrant, the First Circuit gives "significant deference to

the magistrate judge's initial evaluation." <u>United States v. Ribeiro</u>, 397 F.3d 43, 48 (1st Cir. 2005). The First Circuit reverses "only if we see no `substantial basis' for concluding that probable cause existed." <u>Id</u>. at 48 (quoting <u>United States v. Feliz</u>, 182 F.3d 82, 86 (1st Cir. 1999).

More than enough probable cause existed to search defendant Sotirion's house for all of the items listed in Attachment A. As an initial matter, Magistrate Judge Neiman reviewed and found that probable cause existed to search for and seize all of the items listed in Attachment A. Therefore, First Circuit law requires this court to give substantial deference to his finding.

A fair, common sense reading of the affidavit does not warrant suppression. A review of defendant Sotirion's motion reveals that he essentially asks this court to review the affidavit in a manner completely contrary to what the First Circuit commands: a hypertechnical review rather than a fair, common sense review based upon the totality of circumstances. A common sense and realistic reading of the affidavit illustrates an enduring, pervasive, scheme of bribery used to pay for home improvements at the residences of members of the Asselin family and Sotirion as well as a long-standing, regular pattern of theft. This bribery scheme lasted at least from July, 1996 through June, 2002. <u>See</u> Affidavit at ¶ 7, 23. The theft scheme lasted at least 2000 through August, 2002. <u>See</u> Affidavit at ¶

24-26. Given the long-standing duration of these schemes and amount of money involved in those schemes, it was reasonable for the magistrate judge to infer that it was probable that evidence of the bribery and theft schemes, and fruits of those schemes would be found at Sotirion's residence. Given Sotirion's extensive involvement in the bribery scheme, it was reasonable to believe that Sotirion also received the benefits of the bribery scheme in a manner and to an extent similar to Asselin, Sr. and his family.

The information certainly was not stale. As Paragraphs 23 and 26 attest, there was information linking Sotirion to the bribery and theft schemes as late as June, 2002 and August, 2002 respectively. The search warrant was executed in January, 2003, a mere four months after the latest evidence of the crimes described in the Affidavit. The Affidavit certainly was not stale under any definition in the First Circuit.

B. Particularity

A warrant must provide enough information "to guide and control the agent's judgment in selecting what to take" and must not be so broad to "include items that should not be seized." Upham, 168 F.3d at 535. A search warrant is not sufficiently particular if "'nothing is left to the discretion of the officer executing the warrant.'" Fuccillo, 808 F.2d at 175 (quoting Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506 [1965] ).

"General descriptions in warrants, however, have been accepted when the surrounding circumstances render it reasonable." United States v. Morris, 977 F.2d 677, 681 (1st Cir. 1992)(citing United States v. Cortellesso, 601 F.2d 28 (1st Cir. 1979)(general description upheld due to practical impossibility of precise description). See also United States v. Fuccillo, 808 F.2d 173, 176 (1st Cir. 1987)(stating that "[w]e recognize, however, that the overriding principle of the Fourth Amendment is one of reasonableness and on occasion have accepted general descriptions in warrants, holding that such descriptions are not always constitutionally infirm.").

"The degree of specificity required will depend on the circumstances of the case and on the type of items involved." United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999). "A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued." Id. See also Upham, 168 F.3d at 535 (holding that "[a]s a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images."); United States v. Vitek Supply Corp., 144 F.3d 476, 481 (7th Cir. 1998)(stating that "a warrant must explicate the items to be seized only as precisely as the circumstances and the nature of the alleged

6

crime permit.").

The search warrant in this case properly guided the searching agents' judgment in selecting what evidence to seize and what evidence not to seize. Category A was sufficiently particular because the phrase "relating to . . .home improvement projects and/or materials" confined the agents' search solely to such documents. See United States v. Bucuvalas, 970 F.2d 937, 942 (1st Cir. 1992)(holding that search constraints in second clause rendered warrant sufficiently particular).

This limiting phrase meant that the agents knew that they could not seize entire classes of unrelated personal documents, such as correspondence, address books, employment records, health records, education records, and other types of personal papers that would not have been reasonably related to home improvement projects. Even within the subset of documents specifically identified as "contracts, estimates, permits, receipts, invoices, delivery tickets, packing slips and handwritten notes," Category A sufficiently limited the agents' judgment to only home improvement related documents. Thus, the agents knew they could not seize, for example, grocery bills, doctor bills, automobile repair bills, automobile insurance invoices, homeowners' insurance invoices, and the like.

The affidavit sufficiently established that probable cause existed to seize documents related to "home improvement projects

7

and/or materials." Thus, Category A did not permit the agents to engage in an "all records search."

Moreover, the facts and circumstances of the criminal activity prevented the agents from using a phrase more specific than "home improvement projects and/or materials." As the Affidavit made clear, the costs of many of the home improvement projects were paid for by SHA vendors. Given the manner in which the crimes had been committed, investigators had to trace any receipts back back to its source to determine whether or not it had been paid for illegally.

This meant that the illegal character or nature of a particular home improvement receipt, invoice or delivery ticket found at defendant Sotirion's residence may not have been readily distinguishable on its face. Only by tracing the receipt, invoice or delivery ticket back to its source and determining how the item had been paid would the investigators know if the document evidenced illegal activity. See United States v. Beckett, 321 F.3d 26, 33 (1st Cir. 2003)(holding that "[w]e now require only that there is reason to believe that the particular evidence to be seized `will aid in a particular apprehension or conviction.'" (quoting Warden v. Hayden, 387 U.S. 294, 301, 307 (1967)). Therefore, the general description used in Category A was perfectly appropriate given the facts and circumstances of the crimes, and because it was "easily administered based on

8

objective criteria." See Upham, 168 F.3d at 535. See also Vitek Supply Corp., 144 F.3d at 481 (general description sufficiently particular where no "readily-discernable characteristic that would have enabled the agents to identify the illegal substances.").

Category B made explicit what was implicit: that in searching for documentary evidence of home improvement projects and/or materials, such as wallpaper and paint, the agents had a right to photograph the rooms as they entered and seize samples and remnants of home improvement projects. The photographs of paint or wallpaper on the walls or paint cans, for example, memorialized evidence of the fruit of the crimes. Seizure of paint can lids, wallpaper remnants or tile remnants was appropriate given that the illegal character of the remnants' may not have been readily discernible until traced back to their source. Once again, Category B sufficiently limited the agents' judgment to only home improvement related items.

Category C was sufficiently particular because the phrase "relating to the availability of financial resources, or lack thereof, for personal expenditure on and/or re-imbursement of home improvement projects and/or materials" confined the agents' search solely to such documents. This limiting phrase meant that the agents knew that the financial records that they seized had to relate to defendant Sotirion's ability to spend money on

9

home improvement projects and/or materials. This informed the agents that, for example, custodial accounts, unliquidated certificates of deposit, treasury bonds, or trust accounts could not be seized.

Although the class of financial documents was broad, it was nonetheless relevant to show that defendant Sotirion did not pay for or receive re-imbursement for certain home improvement projects and/or materials. In other words, defendant Sotirion's argument "overlooks the fact that the investigation in this case sought to prove a negative." United States v. Ninety-Two Thousand Four Hundred Twenty-Two, 307 F.3d 137, 150 (3rd Cir. 2002) (permitting seizure of legal and illegal sales to show that defendant "had *not* engaged in legitimate sales to the sham groceries). In this case, the investigators had to seize the afore-mentioned financial records to show that defendant Sotirion had not paid for or received re-imbursement for certain home improvement projects or materials in order to prove their illegal character. Therefore, like Category A, Category C was not an "all records" search.

Category D similarly made it clear that the agents had the right to enter, inventory, and photograph various appliances and tools as they searched for SHA bar code numbers or other identifying information on such items. The photographs and recording of serial numbers is nothing more than a memorializa-

ion of their observations, which the searching agents would have been entitled to testify about anyway. Category D limits the agents' judgment to only those types of "furnishings, appliances and/or tools" that bear identifying information such as SHA bar code numbers or serial numbers. This meant that the agents knew that they could not inventory or photograph personal effects such as jewelry or things of that nature.

Finally, Category E limited the agents judgment solely to evidence of "things of value from SHA vendors." Therefore, the agents knew that they could not seize any things of value from non-SHA vendors. Contrary to defendant Sotirion's assertion, given the evidence in the Affidavit, it was entirely reasonable and probable to believe that evidence of bribery would be found at defendant Sotirion's residence.[1]

Finally, any photographs taken during the search are properly admissible under the inevitable discovery doctrine. The "inevitable discovery" doctrine is satisfied when: "first, whether the legal means by which the evidence would have been discovered was truly independent; second, whether the use of the legal means would have inevitably led to the discovery of the evidence; and third, whether applying the inevitable discovery

---

[1] The mere fact that Attachment A did not include dates does not make the search warrant insufficiently particular. See Bucuvalas, 970 F.2d at 942 n.7 (First Circuit does not require dates to make search warrant sufficiently particular).

11

rule would either provide an incentive for police misconduct or significantly weaken constitutional protections." United States v. Almeida, 434 F.3d 25 (1st Cir. 2006). In this case, the photographs are properly admissible under the inevitable discovery rule. The FBI as a policy takes entrance and exit photographs at the time of a search warrant to protect itself against possible future civil claims regarding destruction or theft of property. The FBI's practice of taking entrance and exit photographs for a reason independent of the search warrant satisfies the three elements of the inevitable discovery doctrine.

II. **The Seizing Agent Acted In Good Faith When The Agent Seized Various Items As Authorized By The Terms Of The Search Warrant.**

Leon "protects good faith police reliance on a magistrate search warrant, even if the warrant later proves invalid, unless inter alia the underlying affidavit is `so lacking in indicia of probable cause' as to make reliance upon it `entirely unreasonable.'" Procopio, 88 F.3d at 28 (quoting United States v. Leon, 468 U.S. 897, 923 (1984)(quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975))). See also United States v. Ricciardelli, 998 F.2d 8, 15 (1st Cir. 1993). "`A warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has `acted in good faith in conducting their search.'" Leon, 468 U.S. at 922. "`In the absence of an allegation that the

12

magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" United States v. Robinson, 350 F.3d 66, 70 (1st Cir. 2004)(quoting Leon, 468 U.S. at 926).

In this case, there is no allegation that the issuing magistrate wholly abandoned his detached and neutral role. There is no allegation that Special Agent Hedges' affidavit contained misleading or reckless assertions. Instead, the facts contained in Special Agent Hedges' Affidavit support the conclusion that the seizing agents seized the various items now contested in good faith, believing that the search warrant authorized him to seize the items in Attachment A.

### III. All Of The Remaining Seized Items Were Properly Seized Under The Plain View Doctrine.

Under the plain view doctrine, "[f]irst, the officer must lawfully have reached the position from which he plainly could view the seized object." United States v. Jones, 187 F.3d 210, 219 (1st Cir. 1999)(citing Horton v. California, 496 U.S. 128, 133 (1990)). "Second, the seizure must satisfy the probable cause standard." Jones, 187 F.3d at 220 (citing Soldal v. Cook County, 506 U.S. 56, 66 (1992). "Finally, the plain view exception to the warrant requirement necessitates that the officer `have a lawful right of access to the object itself.'"

13

Jones, 187 F.3d at 220 (quoting Horton, 496 U.S. at 138).

Evidentiary value is "immediately apparent" if there are "`enough facts for a reasonable person to believe that the items in plain view may be contraband or evidence of a crime.'" United States v. Perotta, 289 F.3d 155, 167 (1st Cir. 2002)(quoting United States v. Hamie, 165 F.3d 80, 83 (1st Cir. 1999)). "The term 'immediately apparent' has been defined as sufficient to constitute probable cause to believe it is evidence of criminal activity." Hamie, 165 F.3d at 83. Further, "[t]his standard requires [that] '[t]here must be enough facts for a reasonable person to believe that the items in plain view may be contraband or evidence of a crime. A practical, non-technical probability that incriminating evidence is involved is all that is required.'" Id. (quoting United States v. Giannetta, 909 F.2d 571, 579 (1st Cir. 1990).

There can be no question that the seizing agent satisfied the first and third elements of the plain view doctrine. The seizing agent had a duly authorized search warrant that permitted a search for, among other items, documents relating to home improvements. This naturally permitted the searching agents to look in all areas of defendant Sotirion's house where such items could be located or secreted.

As discussed above, the facts firmly established that the seizing agent had probable cause to believe that documents and

14

photographs of home improvements were evidence of the commission of a crime. Therefore, at a minimum, any documents or physical evidence relating to bribery or theft were properly seized under the plain view doctrine.

IV. **Conclusion**

Therefore, for the foregoing reasons, the Government respectfully requests that the court deny defendant Sotirion's Motion to Suppress.

Filed this 10th day of February, 2006.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                                      /s/ William M. Welch II
                                      WILLIAM M. WELCH II
                                      Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                               Springfield, Massachusetts
                                           February 10, 2006

    I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mailing said motion to:

all defense counsel of record

*/s/ William M. Welch II*
WILLIAM M. WELCH II
Assistant United States Attorney