UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) NO. 03:04-30033-MAP |
| | ) |
| ARTHUR SOTIRION | ) |

**DEFENDANT, ARTHUR SOTIRION'S, MOTION FOR VARIANCE FROM THE UNITED STATES SENTENCING GUIDELINES, MOTION FOR DOWNWARD DEPARTURE, AND SENTENCING MEMORANDUM IN SUPPORT**

**I. INTRODUCTION**

The defendant, Arthur Sotirion, moves the court for a Variance from the United States Sentencing Guidelines and for a Downward Departure. As will be set forth fully below, Sotirion bases his request for variance and a traditional "heartlands" downward departure on the following factors: (1) Sotirion's unique family circumstance, (2) the decreased likelihood of recidivism because of Sotirion's age.

**II. FACTUAL BACKGROUND**

A. Personal Background

Mr. Sotirion was born in Springfield, Mass. March 6, 1949 the oldest of a family that would ultimately include a brother William, 55 and three sisters Elizabeth 52, Deborah 44, and Lisa 43. William resides in Chelsea, Michigan with his wife and a child from a previous marriage. His sister Elizabeth is divorced and lives in Springfield with his sister Lisa who has never married. Both sisters are employed as teachers with the Springfield School Department.

The Defendant's father was an orthopedic surgeon who maintained an office within the family's residence on Maple Street in Springfield. Mr. Sotirion's mother Norma assisted his father in his practice and took care of the family home. Mr. Sotirion's parents are both deceased. Mr. Sotirion married Linda Gelinas in 1972 shortly after graduating from American International College. Mr. Sotirion met his wife while in High School in 1965 and the couple has been together for over forty years. The Sotirion's have three children. Jennifer, age 31, resides in

Springfield with her husband. Leslie, age 30, lives in Longmeadow, and George, 27, lives in Somerville, Massachusetts. All of the children are college graduates and currently employed. The Sotirion's are devoted to their children and to each other. Mr. Sotirion's wife Linda relies on her husband to handle all of the family's business and financial dealings as well as maintenance of the family home. Mrs. Sotirion has been hospitalized on several occasions and suffers from an illness which limits her ability to perform certain tasks without difficulty. As this condition is stress related it is not expected to diminish during Mr. Sotirion's expected incarceration.

### III. ARGUMENT

#### A. The Sentencing Framework Following United States v. Booker

As a result of the United States Supreme Court's decision in United States v. Booker, the United States Sentencing Guidelines are advisory and no longer mandatory. United States v. Booker, 125 S.Ct. 738; 160 L.Ed.2d 621, 651 (2005). The Booker decision changes the sentencing framework followed by District Courts. United States v. Jimenez-Beltre 440 F.3d 514 (1st Cir. 2006). Under Booker, the sentencing court first determines the applicable advisory guideline's range. Next, the sentencing court evaluates the §3553(a) sentencing factors and their application to a particular defendant. I. Based on consideration of the 3553(a) factors, a sentence below the advisory guideline range may be warranted in a particular case. When deciding the sentence to impose, the sentencing court must make factual findings supporting its decision.

Recognizing the District Courts' experience with sentencing, the First Circuit has declined to specify the weight that the sentencing court should give the advisory guideline calculation. United States v. Jimenez- Beltre, *supra*. ("Although making the Guidelines presumptive or per se reasonable does not make them mandatory it tends in that direction.") Although courts in this district apparently have not decided precisely what weight to give to the advisory guideline range, characterizing it as "substantial but not controlling weight" which may be offset by clearly identified and persuasive reasons recognized by the statutory factors. Some districts within the Second Circuit have declined to give the advisory guideline range greater weight than the other 3553(a) factors. See Simon v. United States, 361 F. Supp 2d 35 (E.D.N.Y 2005)(giving guideline calculation and other 3553(a) factors equal weight). "Consultation of the

2

guidelines must be qualified by the reality the guidelines remain general and categorical to a significant degree" United States v. Sagendorf, 445 F3rd. 515 (1st Cir. 2006).

Thus, in deciding what sentence to impose on Mr. Sotirion, this Court must consider the following factors: 1) the nature and circumstances of the offense, 2) the history and characteristics of the defendant, 3) the relationship between the sentence and the seriousness of the offense, 4) the need for the sentence to adequately deter criminal conduct, 5) the need for the sentence to protect the public from further crimes of this defendant, 6) the need to provide the defendant with proper education, vocational training, medical care and other treatment in the most effective manner, 7) the kinds of sentences available, 8) the advisory guideline range, 9) relevant policy statements in the Sentencing Guidelines, 10) the need to avoid unwarranted sentencing disparities, and 11) restitution to the victim. 18 U.S.C. §3553(a) See United States v. Navedo-Conception 450 F3rd. 514 (1st Cir. 2006). (Setting out post-Booker sentencing framework).

After considering the §3553(a) factors the sentencing court then must decide whether to sentence the defendants within the advisory guidelines range, determine if a traditional "heartlands" departure applies or determine if a non-guidelines sentence, i.e., one that is below the advisory guidelines range, applies. After Booker, the fact that a guidelines' factor is discouraged or forbidden does not make it automatically irrelevant when a Court is weighing the statutory factors apart from the guidelines. See United States v. Smith, 445 F3rd.1(1st Cir. 2006). The following section reviews the §3553(a) factors to show why a sentence below the guidelines' range is justified, either as a post-Booker "variance" or as a traditional heartlands departure.

### B. Determining the Sentence

#### 1. The Nature and Circumstances of the Offense

As set forth above, Mr. Sotirion plead guilty to Racketeering, Racketeering Conspiracy and a Tax Count. The Defendant and others used their position within the Springfield Housing Authority to obtain money and other things of value from contractors/vendors doing business with the SHA. The Fraud at issue here was divided into three major categories; The Bribery scheme, The Theft scheme, and The Section 8 Program fraud. Mr. Sotirion's involvement centers around the Bribery and the Theft scheme. There is no evidence to suggest Mr. Sotirion

3

had anything to do with the Section 8 Program Scheme.

Mr. Sotirion became the SHA's Executive Director of Maintenance in 1976. The Bribery and Theft fraud which makes up the core conduct supporting the predicate Acts of Racketeering against Mr. Sotirion did not begin in earnest until the late 1980's. Prior to that time period a number of contractors doing business with the SHA provided gratuities on a sporadic basis. A number of these individuals had a relationship directly with Asselin Sr. which predated Mr. Sotirion's position in 1976. William Pappas and Peter Davis were individuals who dealt directly with Asselin Sr. and with whom Sotirion had minimal contact. Sotirion rarely profited from Pappas relationship with SHA and received a onetime payment from Davis. The main vendors involved in the Fraud scheme with whom Sotirion interacted were Nicholas Katsounakis, hereinafter MPH, Inc., Gary Baribeau, hereinafter, G&R Associates, and Frank Ware.

The Bribery Scheme consisted of a Contractor utilizing a bid prepared with Sotirion's assistance. The bid would include an amount of money to be paid by the contractor to Asselin Sr. and Sotirion if the bid were successful. Sotirion utilized his knowledge of the industry, the contractors likely to offer competitive bids, and the cost of products to effectively handicap the bid process for contractors taking part in the scheme. The Scheme had its genesis when the so called "turnkey" projects SHA had purchased through private developers like Pappas were no longer being funded through HUD. In Lieu of the "turnkey" projects HUD began sponsoring modernization of existing facilities. This change, updating existing facilities, led to a corresponding increase in the need for contractors to perform this work for SHA. Over time, State and Federal Regulations surrounding the bidding process prevented many of SHA's former contractor's from competing because they were unable to qualify under the new regulations.

Two contractors doing work for the SHA in the 1970's and early 80's were Manny Katsounakis and Roland Baribeau. By the early nineties Manny had retired leaving the business to his son Nicholas; Roland Baribeau suffered a stroke and was unable to carry on his business leaving it to his brother Gary. These successor contractors were unprepared to deal with changes to the bidding procedures then being implemented by State and Federal regulations.

Commencing in the late eighties, contractors/vendors needed to be "Pre-Qualified" in order to bid on SHA work, i.e., they needed the ability to obtain bonding and be certified yearly in their stated field of endeavor.

The complexity of the qualification process and the paperwork necessary to insure timely payment impacted these vendors' abilities to compete. Mr. Sotirion began to assist Gary

4

Baribeau and Nicholas Katsounakis to qualify in return for a dollar amount share of the winning bid which was usually split between Sotirion and Asselin Sr.  As Assistant Director of Operations Sotirion had educated himself to changes in the regulations and had developed a level of expertise in the various processes involved in qualifying to bid  and expediting payment for work performed.

Although there were several instances where the conspirators sought to rig the bidding process; in the majority of cases the contractors involved with the scheme were in fact the lowest bidders. The funds generated by this scheme were retained by the vendors and paid out over time in the form of cash payments or through the purchase of goods and services for the benefit of the Defendant's or their family members.

After the scheme was discovered by authorities, Mr. Sotirion retired  from his position with the SHA.

### 2. The History and Characteristics of the Defendant
#### (a) Sotirions  Extraordinary Family Circumstances

A defendant's family circumstances form a part of his/her history and characteristics. United States v. Roberts, 2005 U.S. Dist. Lexis 9141 (S.D.N.Y. 2005). Therefore, in the post-Booker framework, a sentencing court "must consider" facts relating to defendant's extraordinary family circumstances when imposing sentence. Id. (Sentencing below advisory guideline range where defendant was caretaker for his chronically ill partner); United States v. Daidone, 2005 U.S. App. Lexis 3487 (unpublished)(2nd Cir. 2005)(vacating sentence and remanding for resentence in light of Booker and the defendant's extraordinary family circumstances); see United States v. Haidley, 400 F.3d 642 (8th Cir. 2005)(remanding for re-sentencing in light of Booker because the defendant's family circumstances may support a sentence below the lowest level of the advisory guideline.

Even prior to Booker, departures were permitted based on "extraordinary family circumstances" where the factors took a particular case out of the "heartland" of cases that would have been considered by Sentencing Commission. See United States v. Johnson, 964 F.2d 124, 129 (2nd Cir. 1992) (upholding departure based on extraordinary family circumstances where sending the defendant to prison would "wreak extraordinary destruction on dependants who rely solely on defendant."); Accord United States v. Alba, 933 F.2d 1117, 1122 (2nd Cir. 1991)

5

(departure warranted where defendant supported his wife, children, mother, and disabled grandfather); United States v. Galante, 111 F.3d 1029, 1035 (2nd Cir 1997) (departure based on family circumstances where defendant supported his young children, his wife spoke limited English and had limited earning capacity).

Prior to Booker, circuits also frequently upheld departures based on a defendant's extraordinary family circumstances. *See,* e.g., United States v. Rivera, 994 F.2d 942 (1st Cir. 1993) (remanding for resentencing where defendant was single mother of three young children); United States v. Gaskill, 991 F.2d 82 (3rd Cir. 1993) (departure based on defendant's responsibilities for his mentally ill wife); United States v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991) (family circumstances sufficiently extraordinary where defendant was single parent of infant and sole supporter of his sixteen-year-old daughter and daughter's infant child); United States v. Big Crow, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (departure based on family circumstances). Thus, whether this Court frames its decision as a non-guideline sentence below the advisory guideline range, or as a downward departure based on Sotirion's extraordinary circumstances which place him outside the "heartland" of typical theft cases, a sentence below the advisory guideline range is supported. Although under the guidelines, both age, family circumstance, and infirmity were discouraged as bases for departure, under the statute alone conceivably they might be afforded more weight in a particular case, especially if they diminished the risk of recurrence.  See Title 18 U.S.C. §3553 (a)(2)(c) sentence to take into account, inter alia, of need to protect the public from further crimes of the Defendant. United States v. Helderman, 402 F3rd. 220 (1st Cir. 2005).

The Sentencing Guidelines specifically authorize the sentencing court to depart based on a defendant's extraordinary family responsibilities. U.S.S.G. §5H1.6 provides "family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." The qualifying adverb, "ordinarily," indicates that extraordinary family responsibilities are factors on which a departure can be based. *See* United States v. Neil, 903 F.2d 564, 565 (8th Cir. 1990) (policy statement 5H1.6 "necessarily implies that these factors are sometimes relevant"). As the Second Circuit recognized in Johnson, "extraordinary circumstances . . . are by their nature not capable of adequate consideration. They, therefore, may constitute proper grounds for departure." 964 F.2d at 128.  In the present case Mr. Sotirion's family situation is not ordinary.  His children are all emancipated, married, or living away from home. His wife's illness caused him to be extremely protective of her throughout their marriage

6

to the extent that her ability to perform the normal routine of maintaining work and household are affected. Mr. Sotirion's efforts to insulate his wife from stress now means she requires a completely structured environment in order to live life alone. The difficulties associated with attempting to provide this structure are not ordinary aspects of most other lives.

### 3. The Need for the Sentence to Deter Others

The court can impose a sentence that is sufficient to deter others while at the same time avoiding collateral consequences to the Defendant's family. The Defendant appears before the Court involved in a substantial Federal crime, exposed to a serious term of incarceration. The Defendant's arrest and conviction have been closely covered statewide in the media. As part of the Plea Agreement, the forfeiture of the Defendant's real estate and loss of employment were reported in the local media at length. A substantial sentence of incarceration can be imposed below the guideline range, which taken together with all of the other collateral punitive aspects of his conviction are more than sufficient to meet the need for such a sentence to deter others.

### 4. The Need to Protect the Public From This Defendant's Future Criminal Activity

As people age, the likelihood that they will commit future crimes decreases. *See* United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at page 12, www.ussc.gov/publicat/RecidivismGeneral.pdf ("Recidivism rates decline relatively consistently as age increases . . . among all offenders under age 21, the recidivism rate is 35.5% while offenders over age 50 have a recidivism rate of 9.5%). While the percentages change depending upon the criminal history category for each age group, the likelihood of recidivism consistently decreases with age, for all defendants in all criminal history categories. Id. A defendant's age, as it relates to the likelihood that she/he will commit future crimes, is relevant at sentencing. *See* United States v. Carmona-Rodriguez, 2005 U.S. District Lexis 6254 (S.D.N.Y. 2005)(departing below advisory guideline range based in part on lower rate of recidivism for 55 year old defendant); Simon v. United States, 361 F.Supp. 2d 35 (E.D.N.Y. 2005) (same).

Sotirion is a 57-year-old man. He has never before been arrested for an offense or incarcerated. If a sentence is imposed at the middle of the guidelines' range, Sotirion will be 66

years old when he is released from prison. When deciding Sotirion's sentence, this court can and should consider Sotirion's age as it relates to the decreased likelihood that he will commit crimes in the future.

### 5. The Kinds of Sentences Available

The Court can impose a sentence of incarceration, supervised release, a fine, and restitution within or below the guideline range described below.

### 6. The Guideline Range

The base offense level for defendant's offense is 33 *See* U.S.S.G. §2 D.1.1. The Government has agreed not to oppose a three level downward adjustment for acceptance of responsibility. U.S.S.G. §3E1.1(a) and (b). The result is a total offense level of 30. With a total offense level of 30 and defendant's Criminal History Category of I, the advisory guideline range is a term of imprisonment of 97-121 months, a fine between $17,500.00 and $1,000,000.00, and a term of supervised release of 5 years. Based on consideration of the relevant 3553(a) factors, a sentence, even at the lowest end of the advisory range, is greater than necessary to accomplish the purposes of sentencing. United States v. Booker, 160 L.E.2d 621, 125 S.Ct. 738 (2005).

### 7. Relevant Policy Statements

The relevant policy statements are addressed where applicable in this Memorandum. They are: §5H1.1 (Age); §5H1.4 (Physical Condition); §5H1.6 (Family Circumstances); §5K2.0 (Grounds for Departure).

### 8. The Need to Avoid Sentencing Disparity

The Court must balance the need for uniformity against the requirement that the sentence should not be greater than necessary to satisfy the purposes of sentencing. 18 U.S.C. §3553(a). Thus, this Court can impose a sentence that is disparate from other defendants convicted of the same conduct because of the particular circumstances of this case specifically Sotirion's family

circumstances, the circumstances of the offense, Sotirion's age and decreased likelihood of recidivism. A central concern with disparities is between what the defendant was given and what is done nationally with defendants in the same circumstances. Thurston, 456 F.3d 211 at 216 (1st Cir. 2006); United States v. Navedo-Concepción, 450 F.3d 54, 60 (1st Cir.2006); United States v. Smith, 445 F.3d 1, 5 (1st Cir. 2006). In the ordinary course, a sentence within the guidelines is likely to reflect the national standard; however this is nothing more than a hoped for generality. . The guidelines are not a perfect reflection of past practice, see Jiménez-Beltre, 440 F.3d 514 at 518 (1st Cir. 2006), and other sources of information about national sentencing may be available. United States v. Saez, 444 F3rd 15 (1st Cir. 2006). In the ordinary course, a sentence within the guidelines may reflect the national standard; but without a substantial basis for comparison it does not necessarily follow.

### D. The Totality of the Circumstances

The Sentencing Guidelines expressly recognize that some cases present such a compelling combination of factors that a downward departure is justified based on the totality of the circumstances, even if each factor individually would not justify a departure. As the Commission stated:

> The Commission does not foreclose the possibility of an extraordinary case that , because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. U.S.S.G. §5K2.0 (policy statement)

Arthur Sotirion presents this Court with a case that is outside the "heartland" of cases considered by the sentencing commission. Although Mr. Sotirion believes that each of the factors discussed above supports a departure on its own, collectively they present an even more compelling basis for departure.

If Mr. Sotirion is imprisoned for the length of time contemplated under a strict guideline application the long term stress on vulnerable family members will increase at a geometric rate.

Although the conduct for which he is to be sentenced is serious , a substantial period of incarceration below the applicable Guideline Range would be more than sufficient to address the Defendant's conduct, in view of his age and lack of criminal record . Mr. Sotirion was earning approximately $90,000 annually as the Executive Director of Operations with over thirty years of service at the SHA. As a result of this conviction he will be ineligible to receive a pension nor will he be able to recover those amounts which he had contributed to the pension fund from his salary.  He presently earns approximately $35,000 annually.  He has had to sell one of the homes which he previously owned in order to repay monies provided to him from family and friends in order to pay restitution under the plea agreement. Restitution ordered as part of a criminal sentence is a criminal penalty not a civil remedy. United States v. Savoie,  985 F2d 612 (1st Cir 1993) .  The nature of restitution is penal and not compensatory. Restitution imposed as part of a criminal sentence is not a civil affair it is a criminal penalty meant to have a deterrent and rehabilitative effect United States v. Ziskind, ___F3rd___ 2006 WL3759295. Mr. Sotirion, has as a result of his conduct, insured that his retirement years will be spent working in order to support his wife and himself.  His parents' legacy to he and his children will be needed to support his wife in his absence. This Court can and should consider affording substantial weight to the series of collateral financial consequences of his plea to he and his family.

      Together, these circumstances support a downward departure because neither the scheme nor the defendant fall within the heartland of cases contemplated by the Sentencing Guidelines. United States v. Broderson, 67 F.3d 452 (2nd Cir. 1995).

### IV. CONCLUSION

      For the reasons set forth above, Mr. Sotirion requests that this Court grant his request for a sentence below the advisory guideline range imposing a sentence of community custody, home confinement, community service and probation.

        Respectfully submitted,

        THE DEFENDANT

BY: /s/ Vincent A. Bongiorni
95 State Street - Suite 309
Springfield, MA 01103
(413) 732-0222
BBO #106273

CERTIFICATE OF SERVICE

    I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing via CM/ECF to AUSA Steven Breslow, Federal Building & Courthouse, 1550 Main Street, Springfield, MA 01103, this 5th day of January 2007.

        /s/ Vincent A. Bongiorni